Clerk's Office
Filed Date:
2/17/2021
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

JOHN TRISVAN,

                Plaintiff,

     v.

REGAL ENTERTAINMENT GROUP and
CINEWORLD,

                Defendants.

---

NOT FOR PUBLICATION

**MEMORANDUM & ORDER**
21-CV-187 (MKB)

MARGO K. BRODIE, United States District Judge:

     Plaintiff John Trisvan, proceeding *pro se*, commenced the above-captioned action against Defendants Regal Entertainment Group ("Regal") and Cineworld on January 8, 2021, alleging that he "fell ill" after consuming a soft drink and popcorn at Regal Cinemas in Brooklyn, New York, and seeking relief pursuant to the Clayton Act, the Magnuson-Moss Warranty Act (the "MMWA"), and the Uniform Commercial Code (the "U.C.C."). (Compl. 2, Docket Entry No. 1.)[1] The Court grants Plaintiff's application to proceed *in forma pauperis* ("IFP") pursuant to 28 U.S.C. § 1915(a). (Mot. for Leave to Proceed IFP, Docket Entry No. 4.)

     For the reasons set forth below, the Court dismisses the Complaint and grants Plaintiff leave to file an amended complaint within thirty days of this Memorandum and Order.

**I. Background**

     The Court assumes the truth of the factual allegations in the Complaint for the purposes of this Memorandum and Order.

---

[1] Because the Complaint is not consecutively paginated, the Court refers to the page numbers assigned by the electronic case filing system.

### a. Factual background

Plaintiff alleges that on January 12, 2018, he went to see a movie at Regal's theatre located at 106 Court Street in Brooklyn, New York, where he "consumed a soft drink and popcorn" and subsequently "fell ill." (Compl. 2.) A week later, on January 19, 2018, he went to see another movie, where he "consumed a soft drink and popcorn, which again[] gave an adverse effect similar to food poisoning[,] which was discovered once Plaintiff went to be seen by doctors at Woodhull Hospital." (*Id.*) Plaintiff seeks $225,000 in "punitive and compensatory relief." (*Id.* at 4.)

### b. Plaintiff's litigation history

This is Plaintiff's fourth action against various entities asserting claims under the Clayton Act, the MMWA, and the U.C.C. based on alleged food poisoning. *See Trisvan v. Ky. Fried Chicken Corp.*, No. 20-CV-2071, 2021 WL 327728, at *5 (E.D.N.Y. Feb. 1, 2021) (dismissing amended complaint); *Trisvan v. Burger King Corp.*, No. 19-CV-6396, 2020 WL 1975236, at *4 (E.D.N.Y. Apr. 24, 2020) (dismissing amended complaint); *Trisvan v. Checkers Drive-In Rests., Inc.*, No. 16-CV-7000, 2020 WL 906635, at *6–7 (E.D.N.Y. Feb. 18, 2020) (dismissing fourth amended complaint), *appeal dismissed*, No. 20-1271 (2d Cir. Oct. 1, 2020).

## II. Discussion

### a. Standard of review

A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also Pension Benefit Guar.*

*Corp. ex rel. Saint Vincent Cath. Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 717–18 (2d Cir. 2013). Although all allegations contained in the complaint are assumed to be true, this principle is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. In reviewing a *pro se* complaint, a court must be mindful that a plaintiff's pleadings must be held "to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *see also Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (noting that even after *Twombly*, courts "remain obligated to construe a *pro se* complaint liberally"). Nevertheless, the Court is required to dismiss *sua sponte* an *in forma pauperis* action if the Court determines it "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B); *see also Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007).

In addition, pursuant to Rule 12(h)(3) of the Federal Rules of Civil Procedure, if a court "determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3); *see also Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.À.R.L.*, 790 F.3d 411, 416–17 (2d Cir. 2015) ("A district court properly dismisses an action under [Rule 12(b)(1) of the Federal Rules of Civil Procedure] for lack of subject matter jurisdiction if the court 'lacks the statutory or constitutional power to adjudicate it.'" (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000))); *Lyndonville Sav. Bank & Tr. Co. v. Lussier*, 211 F.3d 697, 700–01 (2d Cir. 2000) ("[F]ailure of subject matter jurisdiction is not waivable and may be raised at any time by a party or by the court *sua sponte*. If subject matter jurisdiction is lacking, the action must be dismissed.").

3

### b. Plaintiff fails to state his federal claims

Plaintiff invokes the Court's federal question jurisdiction with regard to his claims that "all defendants . . . violated the Clayton Act . . . and the [MMWA]." (Compl. 2.)

Federal courts are courts of limited jurisdiction and may not hear cases if they lack subject matter jurisdiction over the issues presented. *Lyndonville Sav. Bank & Tr. Co.*, 211 F.3d at 700–01. "In 28 U.S.C. §§ 1331 and 1332(a), Congress granted federal courts jurisdiction over two general types of cases: cases that 'aris[e] under' federal law, § 1331, and cases in which the amount in controversy exceeds $75,000 and there is diversity of citizenship among the parties, § 1332(a)." *Home Depot U.S.A., Inc. v. Jackson*, 587 U.S. ---, ---, 139 S. Ct. 1743, 1746 (May 28, 2019) (alteration in original) (quoting *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005)). Federal question jurisdiction provides federal courts jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." *Bounds v. Pine Belt Mental Health Care Res.*, 593 F.3d 209, 215 (2d Cir. 2010) (quoting 28 U.S.C. § 1331). A plaintiff properly invokes section 1331 jurisdiction when he or she pleads a colorable claim "arising under" the Constitution or laws of the United States. *Id.*; *see also Fairfield Cnty. Med. Ass'n v. United Healthcare of New Eng., Inc.*, 557 F. App'x 53, 55 (2d Cir. 2014) ("A cause of action 'arises under' federal law and thus confers subject matter jurisdiction pursuant to 28 U.S.C. § 1331 'when the plaintiff's "well-pleaded complaint" raises an issue of federal law.'" (quoting *New York v. Shinnecock Indian Nation*, 686 F.3d 133, 138 (2d Cir. 2012))).

### i. Antitrust claims

Plaintiff alleges that Defendants violated the Clayton Act. (Compl. 2.)

"Section 1 of the Sherman Act prohibits '[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States.'"

4

*US Airways, Inc. v. Sabre Holdings Corp.*, 938 F.3d 43, 54 (2d Cir. 2019) (alteration in original) (quoting 15 U.S.C. § 1). However, "[s]ection 1 of the Sherman Act does not itself provide a private right of action." *In re Publ'n Paper Antitrust Litig.*, 690 F.3d 51, 62 (2d Cir. 2012). Rather, "[s]ection 4 of the Clayton Act establishes a private right of action for violation of federal antitrust laws, permitting 'any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws' to sue in federal court." *Eastman Kodak Co. v. Henry Bath LLC*, 936 F.3d 86, 93 (2d Cir. 2019) (quoting 15 U.S.C. § 15(a)); *In re SSA Antitrust Bonds Litig.*, 420 F. Supp. 3d 219, 229 (S.D.N.Y. 2019) ("[T]he private right of action to pursue antitrust claims is provided by the Clayton Act[.]" (second alteration in original) (quoting *Animal Sci. Prods., Inc. v. Hebei Welcome Pharm. Co.* (*In re Vitamin C Antitrust Litig.*), No. 05-CV-453, 2012 WL 12355046, at *5 (E.D.N.Y. Aug. 8, 2012))); *Ruotolo v. Fannie Mae*, 933 F. Supp. 2d 512, 519 (S.D.N.Y. 2013) ("At the threshold, [the] [p]laintiff cannot actually sue directly under the Sherman Act, 15 U.S.C. § 1, because 'Section 1 of the Sherman Act does not itself provide a private right of action.'" (quoting *In re Publ'n Paper Antitrust Litig.*, 690 F.3d at 62)). "Despite the broad language of the statute, courts have carefully parsed antitrust standing in order to avoid counter-productive use of antitrust laws in ways that could harm competition rather than protecting it." *Port Dock & Stone Corp. v. Oldcastle Ne., Inc.*, 507 F.3d 117, 121 (2d Cir. 2007) (citing *Serpa Corp. v. McWane, Inc.*, 199 F.3d 6, 10 (1st Cir. 1999)). Standing is required because "the purpose of the Clayton Act's private right of action is not 'to provide a remedy in damages for all injuries that might conceivably be traced to an antitrust violation,' but only for injuries 'of the type that the antitrust statute was intended to forestall.'" *Eastman Kodak Co.*, 936 F.3d at 94 (quoting *Associated Gen. Contractors, Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 535, 540 (1983)). "To satisfy the antitrust

standing requirement, a private antitrust plaintiff must demonstrate that (1) it has suffered 'a special kind of antitrust injury,' and (2) it is an 'efficient enforcer' of the antitrust laws." *Id.* (quoting *Port Dock & Stone Corp.*, 507 F.3d at 121). Courts "employ a three-step process for determining whether a plaintiff has sufficiently alleged antitrust injury," under which they (1) consider whether "the party asserting that it has been injured by an illegal anticompetitive practice [has] 'identif[ied] the practice complained of and the reasons such a practice is or might be anticompetitive'"; (2) consider "how the practice identified by the plaintiff put the plaintiff in a 'worse position'"; and (3) compare the "'anticompetitive effect of the specific practice at issue' to 'the actual injury the plaintiff alleges.'" *Id.* (quoting *Gatt Commc'ns, Inc. v. PMC Assocs. L.L.C.*, 711 F.3d 68, 78 (2d Cir. 2013)). After determining that a plaintiff has "cleared the antitrust-injury hurdle," courts determine whether the plaintiff is an "efficient enforcer" of the antitrust laws by evaluating:

> (1) "the directness or indirectness of the asserted injury," (2) "the existence of an identifiable class of persons whose self-interest would normally motivate them to vindicate the public interest in antitrust enforcement," (3) "the speculativeness of the alleged injury," and (4) "the difficulty of identifying damages and apportioning them among direct and indirect victims so as to avoid duplicative recoveries."

*IQ Dental Supply Inc. v. Henry Schein, Inc.*, 924 F.3d 57, 65 (2d Cir. 2019) (quoting *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 443 (2d Cir. 2005)). "These four factors need not be given equal weight: the relative significance of each factor will depend on the circumstances of the particular case." *Id.* (citing *Daniel*, 428 F.3d at 443).

Plaintiff fails to show that he has suffered the kind of antitrust injury required for standing to bring a private antitrust claim. (*See generally* Compl.); *Paycom Billing Servs., Inc. v. Mastercard Int'l, Inc.*, 467 F.3d 283, 290–91 (2d Cir. 2006). In addition, Plaintiff does not allege any facts that could suggest a claim arising from or connected to any anticompetitive

6

behavior by Defendants in violation of the Clayton Act. (*See generally* Compl.) Therefore, construing Plaintiff's allegations to "raise the strongest arguments they suggest," *McLeod*, 864 F.3d at 156 (quoting *Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007)), the Court finds that Plaintiff not only lacks statutory standing to bring an antitrust claim but also fails to allege any facts to support a substantive antitrust violation. *Ramnarine v. Nationstar Mtge., LLC*, No. 19-CV-5544, 2019 WL 7038430, at *2 (E.D.N.Y. Dec. 20, 2019); *Ruotolo*, 933 F. Supp. 2d at 519. Therefore, the Court dismisses Plaintiff's antitrust claim. *See* 28 U.S.C. § 1915(e)(2)(B).

### ii. Magnuson-Moss Warranty Act Claim

Plaintiff alleges that he was "damaged by the failure by the supplier and warrantor and/or service contractor . . . to comply with any obligation under the [MMWA]." (Compl. 3 (citing 15 U.S.C. § 2310(d)).)

The Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*, "is a remedial statute designed 'to improve the adequacy of information available to consumers, prevent deception, and improve competition in the marketing of consumer products.'" *Pyskaty v. Wide World Cars, LLC*, 856 F.3d 216, 222 (2d Cir. 2017) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. Abrams*, 899 F.2d 1315, 1317 (2d Cir. 1990)). The MMWA "permits 'a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with . . . a written warranty [or] implied warranty . . . [to] bring suit for damages and other legal and equitable relief." *Id.* (alterations in original) (quoting 15 U.S.C. § 2310(d)(1)). However, the MMWA provides, in pertinent part, that "[n]o claim shall be cognizable . . . if the amount in controversy of any individual claim is less than the sum or value of $25" or "if the amount in controversy is less than the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit." 15 U.S.C. § 2310(d)(3)(A), (B); *Pyskaty*,

7

856 F.3d at 222 (stating same); *Abedrabbo v. Topps Meat Co., LLC*, 756 F. Supp. 2d 18, 23 (D.D.C. 2010) (same). In addition, the MMWA specifically precludes recovery for personal injury. It states in relevant part: "[n]othing in this chapter (other than sections 2308 and 2304(a)(2) and (4) of this title) shall (A) affect the liability of, or impose liability on, any person for personal injury, or (B) supersede any provision of State law regarding consequential damages for injury to the person or other injury." 15 U.S.C. § 2311(b)(2); *see Kelly v. Fleetwood Enters., Inc.*, 377 F.3d 1034, 1038 (9th Cir. 2004) (dismissing the plaintiff's claim under the MMWA where the plaintiff sought damages for "loss of enjoyment of retirement," finding such "loss of enjoyment" to be precisely the type of relief potentially available under state law but not under the [MMWA]").

Plaintiff's MMWA claim seeks recovery for personal injuries he sustained as a result of food poisoning and is therefore not cognizable under the MMWA. *See Abedrabbo*, 756 F. Supp. 2d at 23 (dismissing the plaintiff's MMWA claim where the plaintiff attempted to recover for personal injuries he sustained, including abdominal cramps, diarrhea, and fatigue, because of the defendant's beef products). In addition, because personal injury damages cannot be included in calculating the amount in controversy, Plaintiff fails to meet the jurisdictional minimum required to bring a claim under the MMWA. *See id.* (finding that the plaintiff's claim under the MMWA failed to meet the jurisdictional minimum because the plaintiff sought to recover damages only for personal injuries). Therefore, the Court dismisses Plaintiff's claim under the MMWA without prejudice. *See* 28 U.S.C. § 1915(e)(2)(B).

Accordingly, the Court dismisses Plaintiff's claims under the Clayton Act and the MMWA.

b. **The Court lacks subject matter jurisdiction over Plaintiff's U.C.C claim**

Plaintiff invokes the Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332 with regard to his state law claim that Defendants "violated U.C.C. law" by "failing to assure the products sold [were] of good substance." (Compl. 2–3.)

As discussed above, the statutory provisions for federal subject matter jurisdiction are contained in 28 U.S.C. §§ 1331 and 1332. Under the diversity jurisdiction statute, federal courts have subject matter jurisdiction over state law claims where all plaintiffs and all defendants are of diverse citizenship and "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a); *see also Bartlett v. Honeywell Int'l Inc.*, 737 F. App'x 543, 547 (2d Cir. 2018) ("Diversity jurisdiction is present when there is complete diversity between the parties . . . ." (citing 28 U.S.C. § 1332(a))); *Pa. Pub. Sch. Emps.' Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 117–18 (2d Cir. 2014) ("Subject matter jurisdiction is based on 28 U.S.C. § 1332, which requires 'complete diversity,' *i.e.*[,] all plaintiffs must be citizens of states diverse from those of all defendants." (footnote omitted) (quoting *Exxon Mobil Corp.*, 545 U.S. at 553)); *Bayerische Landesbank, N.Y. Branch v. Aladdin Cap. Mgmt. LLC*, 692 F.3d 42, 48 (2d Cir. 2012). "For diversity purposes, a corporation is considered a citizen of the state in which it is incorporated and the state of its principal place of business." *Bayerische*, 692 F.3d at 48 (first citing 28 U.S.C. § 1332(c)(1); and then citing *Universal Licensing Corp. v. Paola del Lungo S.p.A.*, 293 F.3d 579, 581 (2d Cir. 2002)); *see also Hertz Corp. v. Friend*, 559 U.S. 77, 92–93 (2010) (holding that "'[p]rincipal place of business' is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities"). In addition, "[f]ederal diversity jurisdiction requires an amount in controversy of at least $75,000." *Lapaglia v. Transamerica Cas. Ins. Co.*, 155 F. Supp. 3d 153, 154 (D. Conn.

2016) (citing 28 U.S.C. § 1332(a)). "[T]his amount is measured as of the time that a complaint is filed, and it is established by the face of the complaint and the dollar amount actually claimed." *Id.* at 154–55 (first citing *Hall v. EarthLink Network, Inc.*, 396 F.3d 500, 506 (2d Cir. 2005); then citing *Horton v. Liberty Mut. Ins. Co.*, 367 U.S. 348, 353 (1961); and then citing *Scherer v. Equitable Life Assurance Soc'y of U.S.*, 347 F.3d 394, 397 (2d Cir. 2003)); *see also Hall*, 396 F.3d at 506 ("Generally, for purposes of diversity jurisdiction, the amount in controversy is established as of the date of the complaint and is not reevaluated based on post-filing events."). "Generally, the plaintiff, as the party asserting subject matter jurisdiction, has the burden of proving that it exists by a preponderance of the evidence." *Broidy Cap. Mgmt. LLC v. Benomar*, 944 F.3d 436, 443 (2d Cir. 2019) (citing *Makarova*, 201 F.3d at 113); *see also Kruglov v. Copart of Conn., Inc.*, 771 F. App'x 117, 119 (2d Cir. 2019); *Scherer*, 347 F.3d at 397 ("A party invoking the jurisdiction of the federal court has the burden of proving that it appears to a 'reasonable probability' that the claim is in excess of the statutory jurisdictional amount." (quoting *Tongkook Am., Inc. v. Shipton Sportswear Co.*, 14 F.3d 781, 784 (2d Cir. 1994))); *Chase Manhattan Bank, N.A. v. Am. Nat'l Bank & Tr. Co. of Chi.*, 93 F.3d 1064, 1070 (2d Cir. 1996) (same). The amount in controversy must be non-speculative in order to satisfy the statute and conclusory allegations that the amount-in-controversy requirement is satisfied are insufficient. *See Valente v. Garrison from Harrison LLC*, No. 15-CV-6522, 2016 WL 126375, at *2 (E.D.N.Y. Jan. 11, 2016) ("[B]oilerplate pleadings do not suffice to establish that [an] action involves an amount in controversy adequate to support federal diversity jurisdiction.").

In addition, where the jurisdictional amount includes punitive damages, those punitive damages will be considered with heightened scrutiny. *See Nwanze v. Time, Inc.*, 125 F. App'x 346, 349–50 (2d Cir. 2005) (finding the plaintiff's "demand for five million dollars' punitive

10

damages based on his claims that [the defendant] fraudulently induced him into subscribing to magazines with promises of multi-million dollar prizes — with unspecified or no actual damages" insufficient to meet amount-in-controversy requirement); *Zahn v. Int'l Paper Co.*, 469 F.2d 1033, 1033 n.1 (2d Cir. 1972) ("[I]n computing jurisdictional amount, a claim for punitive damages is to be given closer scrutiny, and the trial judge accorded greater discretion, than a claim for actual damages."); *Cohen v. Narragansett Bay Ins. Co.*, No. 14-CV-3623, 2014 WL 4701167, at *3 n.4 (E.D.N.Y. Sept. 23, 2014) ("[T]he [c]ourt is not obligated to accept, on face value, a claimed amount of punitive damages, particularly where there would be no diversity without such damages." (citing *Nwanze*, 125 F. App'x at 349)).

Although Plaintiff alleges that the parties are diverse,[2] he fails to provide a basis for seeking $225,000 in punitive and compensatory damages for the alleged food poisoning, making his request for punitive damages speculative. (*See generally* Compl.) Because Plaintiff's request for relief is speculative, it is insufficient to meet the amount in controversy required for the Court to exercise diversity jurisdiction over this matter. *See Centra Devs. Ltd. v. Jewish Press Inc.*, No. 16-CV-6737, 2018 WL 1788148, at *5 (E.D.N.Y. Feb. 20, 2018) (finding a lack of subject matter jurisdiction despite the plaintiff's allegations of "$3,000,000 in punitive damages" because the "[p]laintiff's complaint fail[ed] to allege any other out-of-pocket expenses [that plaintiff] incurred, except attorney's fees"), *report and recommendation adopted*, 2018 WL 1445574 (E.D.N.Y. Mar. 23, 2018); *see also Cohen*, 2014 WL 4701167, at *3 n.4 ("[T]he [c]ourt is not obligated to accept, on face value, a claimed amount of punitive damages, particularly where there would be no diversity without such damages." (citing *Nwanze*, 125 F. App'x at

---

[2] Plaintiff provides a New York address for himself, a Tennessee address for Regal, and a London address for Cineworld. (Compl. 1.) He alleges that Defendants both have "their princip[al] place of business . . . outside of New York." (*Id.* at 2.)

11

349)); *Watty v. Cuomo*, No. 12-CV-2660, 2013 WL 4495184, at *2 (E.D.N.Y. Aug. 14, 2013) ("[The plaintiff's] demand for punitive and other additional damages, unsupported by the law or the allegations in the amended complaint, is not sufficient to satisfy the amount-in-controversy requirement.").

Accordingly, the Court dismisses Plaintiff's state law claim that Defendants "violated U.C.C. law" without prejudice for lack of subject matter jurisdiction pursuant to Rule 12(h)(3) of the Federal Rules of Civil Procedure. (Compl. 2–3.)

### c.  Leave to Amend

In light of Plaintiff's *pro se* status, the Court grants Plaintiff leave to file an amended complaint within thirty days of this Memorandum and Order. Plaintiff is advised that the amended complaint will completely replace the original complaint, must be captioned "Amended Complaint," and shall bear the same docket number as this Memorandum and Order. If Plaintiff intends to invoke the Court's diversity jurisdiction over his state law claim, Plaintiff must clearly state the basis for doing so, including facts to support the amount in controversy. If Plaintiff fails to file an amended complaint within the time allowed, the Court will direct the Clerk of Court to enter judgment dismissing the case for the reasons stated above.

## III.  Conclusion

Accordingly, the Court dismisses with prejudice Plaintiff's claim under the Clayton Act for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B) and dismisses without prejudice Plaintiff's claims under the MMWA and the U.C.C. for lack of subject matter jurisdiction pursuant to Rule 12(h)(3) of the Federal Rules of Civil Procedure. The Court grants Plaintiff leave to file an amended complaint within thirty days from the entry of this Memorandum and Order. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this

Memorandum and Order would not be taken in good faith and therefore denies *in forma pauperis* status for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962). The Clerk of Court is directed to mail a copy of this Memorandum and Order to Plaintiff at the address of record.

Dated: February 17, 2021
       Brooklyn, New York

                                        SO ORDERED:

                                            s/ MKB
                                      MARGO K. BRODIE
                                      United States District Judge